UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| NABEEH MATEEN[1] ] | |
|     Petitioner, ] | |
| ] | |
| v. ] | No. 3:11-0700 |
| ] | Judge Campbell |
| JERRY LESTER, WARDEN ] | |
|     Respondent. ] | |

**M E M O R A N D U M**

The petitioner, proceeding *pro se*, is an inmate at the South Central Correctional Center in Clifton, Tennessee. He brings this action pursuant to 28 U.S.C. § 2254 against Jerry Lester, Warden of the Turney Center Industrial Prison, seeking a writ of habeas corpus.[2]

**I. Background**

On July 19, 2006, a jury in Davidson County found the petitioner guilty of especially aggravated robbery. Docket Entry No.23-1 at pg.22. For this crime, he received a sentence of forty

---

[1] The Court notes that the petitioner's last name has been misspelled in previous pleadings. The proper spelling of his last name is Mateen, not Matten. *See* Docket Entry No.24.

[2] At the time this action was filed, the petitioner was confined at the Turney Center Industrial Prison where Jerry Lester was his custodian. He has since, however, been transferred to his present place of confinement where Arvil Chapman is Warden. *See* Docket Entry No.8.

1

(40) years in prison. Docket Entry No.23-6 at pg.571.

On direct appeal, the Tennessee Court of Criminal Appeals affirmed the conviction and sentence. Docket Entry No.23-10 at pgs.12-24. The Tennessee Supreme Court would later deny the petitioner's application for further review. Docket Entry No.1 at pg.20.

The petitioner next filed a *pro se* petition for state post-conviction relief in the Criminal Court of Davidson County. Docket Entry No.23-10 at pgs.25-33. Counsel was appointed and the petitioner filed an amended post-conviction petition. Following an evidentiary hearing, the trial court denied the petitioner post-conviction relief. Docket Entry No.1 at pgs.22-27.

On appeal, the Tennessee Court of Criminal Appeals affirmed the denial of post-conviction relief. Docket Entry No.23-12 at pgs.73-81. Once again, the Tennessee Supreme Court chose not to grant the petitioner's request for additional review. *Id.* at pg.101.

## II. Procedural History

On July 21, 2011, the petitioner initiated this action with the *pro se* filing of a petition for writ of habeas corpus (Docket Entry No.1). Shortly thereafter, though, the Court granted the petitioner's Motion for Stay and Abeyance (Docket Entry No.3). This action was administratively closed in order to give the petitioner an opportunity to fully exhaust state court remedies for his

2

federal claims. Docket Entry No.5.

In 2012, the petitioner filed two Motions to Remove from Stay and Abeyance Status (Docket Entry Nos.9 and 13) along with an amended habeas corpus petition (Docket Entry No.14). The amended petition contains seven claims for relief. These claims include:

1) the evidence was insufficient to support a conviction;

2) petitioner's sentence was improperly enhanced "beyond that required for and permitted by the Tennessee Legislature";

3) the petitioner was denied the effective assistance of counsel when his attorney[3]
a) failed to have an alibi witness available to testify at trial and at a post-conviction evidentiary hearing;
b) neglected to request funds to hire a private investigator;
c) did not have "meaningful conversations" with the petitioner;
d) was not prepared to impeach a prosecution witness (Michael Scott) with prior inconsistent statements; and
e) failed to file a motion to obtain transcripts of telephone calls between the petitioner and Michael Scott.

By an order (Docket Entry No.16) entered August 2, 2012, the petitioner's Motions were granted, the Clerk was instructed to reopen the instant case file, and the respondent was directed to file an answer, plead or otherwise respond to the amended petition.

Presently before the Court is the respondent's Answer (Docket

---

[3] At trial and on direct appeal, the petitioner was represented by Michael Colavecchio, a member of the Davidson County Bar.

3

Entry No.22), to which the petitioner has offered no reply. Having carefully considered the amended petition, respondent's Answer, and the expanded record, it appears that an evidentiary hearing is not needed in this matter. *See* Smith v. United States of America, 348 F.3d 545, 550 (6th Cir. 2003)(an evidentiary hearing is not required when the record conclusively shows that the petitioner is entitled to no relief). Therefore, the Court shall dispose of the petition as the law and justice require. Rule 8(a), Rules - - - § 2254 Cases.

### III. Analysis of the Claims

**A.) Procedurally Defaulted Claims**

A federal district court will not entertain a petition for writ of habeas corpus unless the petitioner has first exhausted all available state court remedies for each claim in his petition. 28 U.S.C. § 2254(b)(1).

While exhaustion is not a jurisdictional requirement, it is a strictly enforced doctrine which promotes comity between the states and federal government by giving the state an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). Consequently, as a condition precedent to seeking federal habeas corpus relief, the petitioner is required to fairly present his claims to every available level of the state court system. Rose v. Lundy, 455 U.S. 509, 518-20 (1982); Lyons v. Stovall, 188 F.3d

4

327,331 (6th Cir.1999). The petitioner must offer the state courts both the factual and legal bases for his claims. Hicks v. Straub, 377 F.3d 538,552 (6th Cir.2004). In other words, the petitioner must present "the same claim under the same theory" to the state courts. *Id.* It is not enough that all the facts necessary to support a federal claim were before the court or that the petitioner made a somewhat similar state law claim. Anderson v. Harless, 459 U.S. 4,6 (1982).

Once petitioner's federal claims have been raised in the highest state court available, the exhaustion requirement is satisfied, even if that court refused to consider the claims. Manning v. Alexander, 912 F.2d 878, 883 (6th Cir. 1990).[4]

Federal habeas corpus relief is only available to cure "a violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Thus, a claim that is based upon a perceived error or misapplication of state law will not normally be recognized as an actionable claim for federal habeas corpus relief. Lewis v.Jeffers, 497 U.S. 764, 780 (1990).

In challenging his sentence (Claim No.2), the petitioner argues that the trial judge erred by misapplying certain enhancement factors and by failing to consider mitigating factors.

---

[4] In Tennessee, a petitioner need only take his claims to the Tennessee Court of Criminal Appeals in order to fully exhaust his available state court remedies. Rule 39, Tenn. Sup. Ct. Rules; *see also* Adams v. Holland, 324 F.3d 838 (6th Cir. 2003).

5

Docket Entry No.14 at pg.7. This claim was offered to the state courts solely as perceived errors of state rather than federal law. Docket Entry No.23-9 at pgs.13-15. As a consequence, this issue has never been fully exhausted in the state courts as a federal claim.[5]

Unfortunately, at this late date, the petitioner is no longer able to raise his sentencing issues as a federal claim in state court. *See* Tenn. Code Ann. § 40-30-102(a) and (c). Therefore, by way of procedural default, the petitioner has technically met the exhaustion requirement with respect to this claim. Alley v. Bell, 307 F.3d 380, 385 (6th Cir. 2002)(if an unexhausted claim would be procedurally barred under state law, that claim is procedurally defaulted for purposes of federal habeas corpus review).

The exhaustion of a claim *via* procedural default does not, however, automatically entitle a habeas petitioner to federal review of that claim. To prevent a federal habeas petitioner from circumventing the exhaustion requirement in such a manner, the Supreme Court has held that a petitioner who fails to comply with state rules of procedure governing the timely presentation of federal constitutional issues forfeits the right to federal review

---

[5] Petitioner's sentencing claim was raised on direct appeal of the conviction. The Tennessee Court of Criminal Appeals, in dicta, noted that the petitioner's sentence had been enhanced in a manner contrary to the teachings of Blakely v. Washington, 542 U.S. 296 (2004). That court chose not to remand for resentencing, however, finding that the "forty-year sentence is justified by his history of criminal convictions and admitted criminal conduct." Docket Entry No.1 at pg.18. The petitioner chose not to pursue a Blakely claim in this Court.

6

of those issues, absent cause for the noncompliance and some showing of actual prejudice resulting from the alleged constitutional violations. Gray v. Netherland, 518 U.S. 152, 162 (1996).

A habeas petitioner can not rely on conclusory assertions of cause and prejudice to overcome the adverse effects of a procedural default. Rather, he must present affirmative evidence or argument as to the precise cause and prejudice produced. Lundgren v. Mitchell, 440 F.3d 754, 764 (6th Cir.2006). To demonstrate cause, the petitioner must show that an objective factor external to the defense interfered with his ability to comply with the state procedural rule. Murray v. Carrier, 477 U.S. 478, 488 (1986). To establish prejudice, there must be a showing that the trial was infected with constitutional error. United States v. Frady, 456 U.S. 152, 170-72 (1982).

The petitioner's pleadings offer nothing to suggest cause for the failure to exhaust his sentencing claim as a question of federal law in the state courts in a timely manner. Nor has there been a showing of prejudice arising from the alleged violation. Consequently, petitioner's sentencing claim (Claim No.2) will not support an award of federal habeas corpus relief. Teague v. Lane, 489 U.S. 288, 297-98 (1989)(denial of a claim is appropriate when the federal claim was not raised in the state appellate courts for review).

7

Three of the petitioner's ineffective assistance claims, i.e., failure to request funds to hire a private investigator (Claim No.3b), not being prepared to impeach a prosecution witness with prior inconsistent statements (Claim No.3d), and failure to file a motion to obtain the transcripts of telephone calls between the petitioner and a prosecution witness (Claim No.3e), were never raised in a state appellate court. *See* Docket Entry No.23-12 at pgs.3-19. As noted above, state court remedies for these claims are now no longer available. In the absence of cause and prejudice, the procedural default of those remedies is unexcused and will not support an award of federal habeas corpus relief.

**B.) Fully Exhausted Claims**

The petitioner's remaining claims challenging the sufficiency of the evidence (Claim No.1) and the effectiveness of counsel (Claim Nos.3a and 3c) were considered by the state courts on the merits and have been fully exhausted.

The availability of federal habeas corpus relief is limited with respect to claims that have been previously adjudicated on the merits in state court. Harrington v. Richter, 131 S.Ct. 770,780 (2011). When a claim has been adjudicated on the merits in state court, the state court adjudication will not be disturbed unless it resulted in a decision contrary to clearly established federal law or involved an unreasonable application of federal law in light of the evidence. 28 U.S.C. § 2254(d); Nevers v. Killinger, 169 F.3d

8

352, 357 (6th Cir.1999).

In order for a state adjudication to run "contrary to" clearly established federal law, the state court must arrive at a conclusion opposite to that reached by the United States Supreme Court on a question of law or decide a case differently than the United States Supreme Court on a set of materially indistinguishable facts. To grant the writ for an "unreasonable application" of federal law, the petitioner must show that the state court identified the correct governing legal principle involved but unreasonably applied that principle to the facts of the case. <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13 (2000). In short, state court judgments must be upheld unless, after an examination of the state court judgment, the Court is firmly convinced that a federal constitutional right has been violated. *Id.* at 529 U.S. 389.

**1.) Sufficiency of the Evidence**

The right to due process guaranteed by the Constitution insures that no person will be made to suffer the onus of a criminal conviction except upon sufficient proof. Sufficient proof has been defined as the "evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." <u>Jackson v. Virginia</u>, 99 S.Ct. 2781, 2787 (1979). When weighing the sufficiency of the evidence to support a criminal conviction, the Court must view the evidence in a light most

9

favorable to the prosecution. *Id.,* 99 S.Ct. at 2789. The only question this Court need answer "is whether that finding was so unsupportable as to fall below the threshold of bare rationality." Cavazos v. Smith, 132 S.Ct. 2,4 (2011).

Petitioner's sufficiency of the evidence claim (Claim No.1) was presented to the state courts during the direct appeal of his conviction. Docket Entry No.23-9. A jury found the petitioner guilty of especially aggravated robbery. The state courts determined that there was sufficient evidence to support petitioner's conviction. This claim will provide a basis for federal habeas relief only if the Court finds that the ruling of the state courts on this issue was either contrary to or was an unreasonable application of clearly established federal law. Williams, *supra.*

Especially aggravated robbery is defined in Tennessee as the intentional or knowing theft of property from another accomplished with a deadly weapon and where the victim suffers serious bodily injury. Tenn. Code Ann. § 39-13-403(a).

There is no dispute that on the morning of February 7, 2004, at least one assailant approached Rachel Browning and shot her in the parking area of her apartment complex. Docket Entry No.23-2 at pg.17. As she lay on the ground, an assailant got into her car and ran her over. *Id.* at pg.29. The assailant then sped off in the victim's car. *Id.* Since the shooting, the victim has been paralyzed

10

from the chest down to her feet. *Id.* at pg.92.

A short time later, an off duty Belle Meade police officer spotted the victim's car and began to follow it. *Id.* at pg.131. Eventually, the driver turned into an apartment complex and abandoned the car while it was still moving. Police officers were unable to apprehend the driver. From her car, the police recovered the previous night's receipts from the victim's business totaling over eight thousand dollars ($8000). Officers also noted blood stains on the outside of the car. Docket Entry No.23-5.

The prosecution never claimed that the petitioner was directly involved in the robbery and shooting. Rather, it was the prosecution's position that the petitioner planned the robbery as a way of getting back at the victim for refusing to give him money.

The evidence, in a light most favorable to the state, showed that the victim and the petitioner had an intimate relationship. A few days before the robbery, the petitioner asked the victim for one thousand dollars ($1000). She refused to give him the money and he became very upset with her. Docket Entry No.23-2 at pgs.71-72.

The victim agreed to meet with the petitioner on the morning of the shooting at her apartment. *Id.* at pg.87. He made several calls to the victim that morning to confirm her presence at the apartment. The petitioner told an acquaintance, Michael Scott, that he "set up" the victim by convincing some friends to follow her home from work that morning and rob her. Docket Entry No.23-3 at

11

pgs.37-39. Telephone records confirmed that the shooter, later identified as Jermaine Hyler, was in the area around the victim's apartment that morning and that he had spoken with the petitioner shortly before the shooting. Docket Entry No.23-4 at pg.30.

From this evidence, any rational trier of fact could reasonably infer that the petitioner planned the robbery that led to the shooting of the victim. Therefore, it does not appear that the state courts violated clearly established federal law by holding that the evidence was sufficient to support petitioner's conviction for especially aggravated robbery.

**2.) Ineffective Assistance of Counsel**

The petitioner also alleges that trial counsel was ineffective for failing to have an alibi witness available to testify at trial and at the post-conviction evidentiary hearing (Claim No.3a) and for not having "meaningful conversations" with him regarding trial strategy and appeal (Claim No.3c).

The Sixth Amendment provides that a criminal defendant is entitled to the effective assistance of counsel. McMann v. Richardson, 379 U.S. 759, 771 (1970). To establish a violation of this right, the petitioner bears the burden of pleading and proving that his attorney's performance was in some way deficient and that the defense was prejudiced as a result of the deficiency. Strickland v. Washington, 466 U.S. 668 (1984). Prejudice arises when there is a reasonable probability that, but for counsel's

12

errors, the result of the proceeding would have been different. *Id.* at 466 U.S. 694. When considering such a claim, counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. <u>Mallett v. United States</u>, 334 F.3d 491, 497 (6th Cir. 2003).

The petitioner believes that counsel was ineffective for failing to subpoena his girlfriend, Krystal Parnam, who would have provided an alibi for the petitioner's whereabouts on the morning of the shooting (Claim No.3a).

At the post-conviction evidentiary hearing, counsel testified that he met with Ms. Parnam on several occasions. Docket Entry No.23-11 at pg.30. About six weeks prior to trial, though, he had no further contact with her. *Id.* She had disappeared and neither the petitioner nor counsel were able to locate her. *Id.* at pgs.31-32. During the trial, a court officer, at counsel's direction, also made an unsuccessful attempt to locate Ms. Parnam. *Id.* at pg.48. It appears, therefore, that counsel could not have been deficient for failing to subpoena a witness who was not available.

In any event, the petitioner did not produce Ms. Parnam at the post-conviction evidentiary hearing to validate his alibi. In the absence of such testimony, the state courts found that the petitioner was unable to demonstrate prejudice arising from her failure to testify on his behalf. Docket Entry No.1 at pg.36. This

13

conclusion does not in any way offend federal law. Consequently, this claim has no merit.

Finally, the petitioner contends that he was denied the effective assistance of counsel because his lawyer did not have "meaningful conversations" with him about trial strategy and an appeal (Claim No.3c).

Counsel testified that he met with the petitioner at least six or seven times at the jail in addition to those times that the petitioner was at the courthouse for various appearances. Docket Entry No.23-11 at pgs.38-39. The petitioner acknowledged that counsel had visited him several times while he was incarcerated. *Id.* at pg.19. These meetings would last from between fifteen minutes to more than thirty minutes in duration, with meetings held in the two weeks prior to trial lasting more than an hour. During these meetings, counsel discussed the elements of the offense as well as possible defenses with the petitioner. *Id.* at pg.22. He had three-way conversations about the case over the telephone with Ms. Parnam and the petitioner. *Id.* at pg.39. Counsel listened to a tape recording of the preliminary hearing and tried unsuccessfully to interview Michael Scott. *Id.* at pgs.25-29. Counsel sent a letter to the petitioner explaining the potential range of punishment facing the petitioner. *Id.* at pg.37.

With regard to the petitioner's direct appeal, counsel testified that he had discussed with the petitioner the issues to

14

be raised in their motion for new trial. The petitioner never mentioned additional issues at that time. Nor did the petitioner ever contact counsel throughout the appellate process about additional issues he wanted included in the direct appeal. *Id.* at pg.47.

From this evidence, the state courts found that counsel had indeed held "meaningful conversations" with the petitioner about his trial and subsequent appeal. The petitioner has failed to rebut the presumption of correctness accorded to the findings of fact made by the state courts with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Nor has he shown in what way the legal conclusions made by the state courts with respect to this exhausted claim is either contrary to or an unreasonable application of federal law.

## IV. CONCLUSION

Four of the petitioner's claims were never properly exhausted in the state courts (Claim Nos.2,3b,3d and 3e). The procedural default of the state remedies for these claims is unexcused. For that reason, these claims are insufficient to support an award of habeas corpus relief.

The state courts determined that the petitioner's fully exhausted claims lacked merit (Claim Nos.1,3a and 3c). The record supports these findings. The petitioner has failed to demonstrate in what way the legal analysis of the state courts ran contrary to

15

federal law. Accordingly, having carefully reviewed the record, it appears that the state court adjudication of petitioner's fully exhausted claims was neither contrary to nor an unreasonable application of federal law. Consequently, these claims have no merit.

    An appropriate order will be entered.

                                            *Todd Campbell*
                                            Todd Campbell
                                            United States District Judge